NEW YORK OYER AND TERMINER.   November, 1851.   *Edmonds,*
Justice, presiding.

### THE PEOPLE *vs.* OTTO GRUNZIG.

Where, on a trial for murder by poisoning, the deceased, on the third day of
her illness, said to her female attendant that she expected to die because she
was poisoned and also expressed a similar opinion at a subsequent time, and
at no time expressed an opinion that she should recover, her declarations,
made after the third day of her illness down to the time of her death on the
twelfth day of her illness, were received as evidence, although it did not ap-
pear that either of her attending physicians had told her she was going to
die and although it appeared that one of the physicians, not understanding
the cause of her illness, had spoken to her encouragingly of her prospect of
recovery.

The prisoner was tried and convicted of the murder of his
wife Victorine, by poisoning her with arsenic.

On the trial, it appeared in evidence that the deceased, in
company with the prisoner (from whom she had previously
separated), returned from the country on Tuesday afternoon the
31st of July; that they were together that night, and on the
ensuing morning the deceased was attacked with violent vomit-
ing and other symptoms usually accompanying poisoning with
arsenic.   She continued in nearly the same state, occasionally
being slightly relieved, until the morning of 12th August, when
she died.   During her sickness she was attended by a female
neighbor in the day time, the prisoner remaining with her
every night, and she also received occasional visits from two
physicians.   The first physician discontinued his visits on the
Tuesday following her first attack, and the second physician
commenced on the next day, being the eighth day of her illness.
The second physician did not apprehend the cause of her dis-
ease; on visiting her on Thursday preceding her death, he found
her better; in her own language, " I feel better," said she; " I
do not now vomit; I now begin to have my monthlies."
This he thought a favorable symptom and so informed her.   On
visiting her on Sunday he found her in a dying condition, and
on Monday morning about two o'clock she died.

With a view to giving in evidence the declarations of deceased as well *before as after* the visits of the second physician, the female attendant of deceased was examined and testified as follows:

*By District Attorney.*—Q.—How many days was Mrs. Grunzig sick altogether?

*A.*—Twelve days.

Q.—Did you visit deceased every day from her first sickness until her death?

*A.*—Yes, sir.

Q.—How often each day?

*A.*—I would only quit her to get my meals.

Q.—At any time during those visits did she express her fears of dying?

*A.*—She said she expected to die because she thought she was poisoned.

Q.—When did she first express this opinion as to death?

*A.*—I think the third day after her first sickness; she was very sick but had her senses; she was very bad.

Q.—After this did deceased at any time express any hopes of getting well?

*A.*—She never told me she expected to live?

*By Court.* Q.—When was this?

*A.*—She was taken sick on Wednesday, and on Saturday she first told me.

Q.—Did her condition improve at all?

*A.*—From bad it went to worse.

*By Counsel for Prisoner.* Q.—Did any doctor attend her, and what did he say?

*A.*—When Doctor Le Grand came (the second physician) on his first visit he said he thought he could cure her. The next day she was better; the day after she was worse; the next day I found her in a passion. The doctor, after deceased had given herself up, gave her hopes; deceased said she expected to die at 8 A. M., and at half-past 12 P. M. the doctor came; from 9 to 11 A. M. that day her mind wandered; the doctor never told her she was going to die.

Upon this testimony the district attorney offered in evidence the declarations of deceased subsequent to the third day of her illness, as well before as after the visits of the second physician, and cited *Rex* v. *Moseley* ( 1 *Moody's Crown Cases*, 98.) After argument, the court permitted the declarations of deceased to be given in evidence. Prisoner's counsel excepted.

The prisoner was convicted and sentenced to be executed.

The case was submitted by the governor to the judges of the Court of Appeals for advisement, and the following opinion was delivered:

ALBANY, 21st January, 1852.

To His EXCELLENCY, WASHINGTON HUNT:

SIR—Your letter of yesterday, with the minutes of trial and other papers in the case of Otto Grunzig, has been received and considered. After a careful examination of the minutes of the trial, we are unable to say that the evidence objected to was improperly admitted, or that the prisoner was improperly convicted, by reason of any error committed by the judge or the jury. On the contrary, although we think the declarations of the deceased to which exception was taken were entitled to no great weight with the jury, we are of the opinion that the judge would have erred in excluding them from their consideration    We have the honor to be, with great respect, your obedient servants,

A. Gardiner, F. G. Jewett, Charles H. Ruggles, Alexander S Johnson, J. W. Edmonds, M. Watson, P. Gridley.

An application was subsequently made to Mr. Justice Harris for an allowance of a writ of error, which was argued by *Mr Blunt*, district attorney, for the people, and *H. L. Clinton*, for the prisoner, and after full advisement, denied by the judge

The prisoner was executed.